1
2
3
4
5
6
7
8                     IN THE UNITED STATES DISTRICT COURT
9                    FOR THE EASTERN DISTRICT OF CALIFORNIA
10

11
12   **TYRONE ALLEN WILSON,**                    **Case No. 1:14-cv-00732 AWI MJS (HC)**
13                              Petitioner,       **FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS**
14              **v.**
15
16   **E. VALENZUELA,**
17                              Respondent.
18

19          Petitioner is a state prisoner proceeding *pro se* with a petition for writ of habeas
20   corpus pursuant to 28 U.S.C. § 2254. Respondent is represented by Darren Indermill of
21   the office of the California Attorney General. The parties have not consented to
22   Magistrate Judge jurisdiction under 28 U.S.C. § 636(c). (ECF Nos. 4, 14.)
23

24   I.     **PROCEDURAL BACKGROUND**
25          Petitioner is currently in the custody of the California Department of Corrections
26   pursuant to a judgment of the Superior Court of California, County of Kern, following his
27   conviction by jury trial on March 7, 2011, for possession of cocaine base for sale,
28

                                              1

1  maintaining a place for the purpose of selling a controlled substance, and participation in

2  a criminal street gang. (Clerk's Tr. at 400-401.) On May 12, 2011, the trial court

3  sentenced Petitioner to serve a determinate term of ten years in prison. (Id.)

4      Petitioner's direct appeal, filed with the California Court of Appeal, Fifth Appellate

5  District, resulted in reversal of his conviction for maintaining a place for selling or using a

6  controlled substance, but otherwise was denied on December 17, 2012. (Lodged Docs.

7  21-24.) Petitioner filed a petition for rehearing with the appellate court on January 4,

8  2013. (Lodged Doc. 25.) The court modified the opinion on January 11, 2013, and

9  reversed Petitioner's conviction for participation in a criminal street gang. (Lodged Doc.

10  26.) Petitioner filed a petition for review with the California Supreme Court. (Lodged Doc.

11  27.) The Supreme Court summarily denied the petition on March 21, 2013. (Id.)

12      Petitioner did not file for post-conviction relief in the state courts.

13      Petitioner filed the instant federal habeas petition on April 18, 2013. (Pet., ECF

14  No. 1.) In his petition, Petitioner presents two claims for relief: (1) that the trial court erred

15  in allowing the testimony of the gang expert to attempt to establish that petitioner was an

16  active gang member; and (2) that the state courts' determination of the facts in light of

17  the evidence presented was unreasonable. (Pet.)

18      Respondent filed an answer to the petition on August 16, 2013. (Answer, ECF No.

19  15.) Petitioner did not file a traverse.

20

21  **II.    STATEMENT OF THE FACTS[1]**

22      On the evening of March 2, 2010, Bakersfield police officers Tim
   Diaz and Pete Beagley pulled over a car with tinted windows and a
23  missing rear license plate. Wilson was driving the car. The officers
   searched him, and in his pockets they found $425 in cash and a key card
24  bearing the name of a hotel chain, America's Best Inn.

25      Diaz and Beagley turned Wilson over to another officer and
   proceeded to the America's Best Inn at 8230 East Brundage Lane. The
26

---

27  [1]The Fifth District Court of Appeal's summary of the facts in its December 17, 2012 opinion is presumed
   correct.  28 U.S.C. § 2254(e)(1).

28

2

desk clerk told them that Wilson was staying in room 221. The registration form on file at the front desk for room 221 showed that the room was registered to Scyotria Williams, Wilson's girlfriend. Copies of Wilson's and Williams's driver's licenses were attached to the form. Williams's name was misspelled "Wiliams" on the form.

The card the officers found in Wilson's pocket unlocked the door to room 221. The officers found, hidden under a nightstand, a bag containing a substance that was later determined to be 266.8 grams of cocaine base. Behind a microwave oven they found a digital gram scale with white residue on the weighing platform. A backpack filled with cash was behind an armchair. There was $11,400 in the backpack, sorted into bundles by denomination. All but $1,600 was in denominations smaller than $50. On a desk were two boxes of clear plastic sandwich baggies. The desk drawer contained a razor blade with white residue on it. Beneath the desk was a trash can; inside were several torn plastic baggies. Pieces of plastic bags with torn corners were on the floor beside the trash can. On the floor of the closet was a black plastic bag with its corners torn off.

Also behind the microwave was a receipt with numbers written on it, and the words, "I love you, Holiday." A sign reading "Holiday" was on the bed or against the wall. Bakersfield police officers knew Wilson by the gang moniker Holiday. On previous occasions when he was incarcerated, Wilson had identified himself as a member of the Country Boy Crips criminal street gang and had asked to be housed apart from rival gang members. He had the letter C tattooed on the back of his left arm and the letter B tattooed on the back of his right arm.

The officers also found clothing, a shoulder bag, sunglasses, food, toiletries, and other items in the room. From these, they inferred that at least two people, a man and a woman, had been staying in the room. When interviewed by police, Wilson denied any knowledge of the hotel room or its contents. He said he had never been to that hotel and it was impossible that the hotel would have a copy of his driver's license.

At the time of the current offenses, Wilson was on probation in case No. BF123662A. In that case, in 2008, Wilson pleaded no contest to one count of being a felon in possession of a firearm. (Former Pen. Code, § 12021, subd. (a)(1).) He received three years' probation, including one year in county jail. On March 9, 2010, Wilson was arraigned on a violation of probation based on the facts of the current offenses.

The district attorney filed an information in case No. BF131206A on August 6, 2010, charging three counts: (1) possessing cocaine base for sale (Health & Saf. Code, § 11351.5); (2) maintaining a place for the purpose of unlawfully selling, giving away, or using a controlled substance (Health & Saf. Code, § 11366); and (3) actively participating in a criminal street gang (Pen. Code, § 186.22, subd. (a)).[1] For sentence-enhancement purposes on counts one and two, the information alleged that Wilson committed the offenses for the benefit of, at the direction of, or in association with a criminal street gang. (§ 186.22, subd. (b).) The information also alleged for sentence-enhancement purposes on each count that Wilson had served two prior prison terms. (§ 667.5, subd. (b).)

---

[1] Further statutory references are to the Penal Code, unless otherwise indicated.

3

At trial, police officers testified about the traffic stop and the search of the hotel room as described above. Rashmi Mulgi, one of the owners and managers of the hotel, testified that Wilson was staying in room 221 on March 2, 2010, and that he and Williams had been staying at the hotel for about a month.

Officer Beagley, who had made many arrests for possession of controlled substances, gave opinion testimony about illegal drugs. He said that one gram of cocaine base has a street-level value of about $100. For street sales, a large rock of cocaine base is usually divided by means of a razor blade into small pieces worth $10 each and packaged in bindles. A bindle is usually made from a corner of a plastic bag. A small rock of cocaine base is placed in the corner of the bag and the corner is then twisted off and tied or melted closed. Sandwich bags or grocery bags can be used. Answering a hypothetical question based on the evidence found in room 221, Beagley opined that whoever possessed the drugs would be in possession of them for the purpose of selling them.

Bakersfield police officer Daniel Champness testified as an expert on gangs. The parties stipulated that the Country Boy Crips are a criminal street gang within the meaning of section 186.22. Champness opined that Wilson was an active participant in the County Boy Crips on March 2, 2010. He mentioned a number of facts to support this opinion. Wilson had a "C" and a "B" tattooed on the backs of his arms, which Champness said he had seen on other Country Boy Crips members—and on no one else—and which stood for "Country Boy." Defense counsel opined that the "C" looked like a "G."

The jury was shown a photograph of another Country Boy Crips member with similar tattoos on his arms. Wilson was known to officers in the department as Holiday, which Champness opined was a gang moniker. On seven occasions when Wilson was booked at the county jail between 1999 and 2008, Wilson claimed he was a Country Boy Crip and asked to be kept away from members of the Bloods gang. In addition:

> • In 2003, Wilson was arrested with a controlled substance and cash in his possession, both in quantities that led officers to conclude he possessed the drugs for sale.

> • On February 13, 2005, Wilson was stopped at D&A Market, a Country Boy hangout in Country Boy territory, where illegal drugs were sold.

> • Wilson was identified as a suspect who, on February 18, 2005, held two women at gunpoint in an apartment, demanding to know what happened to some money.

> • The same day, at a different apartment, Wilson conducted an illegal drug transaction.

> • The following day, February 19, 2005, Wilson was stopped while driving in Country Boy territory with several other known Country Boy Crips and two firearms in the car. One of the other gang members called Wilson by his gang moniker, Holiday.

1

2

3
• On March 19, 2005, Wilson was arrested while in Country Boy territory and in the company of another gang member. The other gang member was in possession of an illegal drug.

4

5

6
• On November 1, 2006, a shooting took place at the Regency Bowling Alley, a place known to police as a Country Boy Crips hangout. Wilson was interviewed by police because he had connections to a person who was arrested for the shooting and because a witness described a person matching Wilson's general description as being present.

7

8

9
• On February 23, 2007, police searched Wilson's home and found a digital scale with a residue of a controlled substance on it.

10
• On May 31, 2008, officers searched a home and found "indications" that Wilson had sold drugs there.

11

12

13

14

15

16

17

18

19

20
Champness also opined that Wilson possessed the drugs in room 221 and maintained the room as a place for selling drugs for the benefit of and in association with his gang. In support of this, he testified that illegal drug sales are a common crime among the Country Boy Crips. Street-level sales of the drugs "are primarily controlled by these gang members." The America's Best Inn was outside Country Boy Crips territory, but Champness stated that there was a trend among the County Boy Crips to work outside their territory to avoid prosecution. Money from drug sales often is "funneled back into the gang," and used to pay for guns, bail, more drugs to sell, and apartments or houses to use as safe houses or for drug storage. Even when drug profits are not returned to the gang, the sales benefit the gang because they allow "that individual who is selling to continue in a lifestyle—a gangster lifestyle" and to conduct other illegal activities, enhancing the member's reputation and the gang's reputation. Wilson's activities at the hotel room would promote criminal gang conduct by providing "a place to distribute or at least package the very narcotics that they are selling, the monies generated from that benefiting the gang." Champness said many Country Boy Crips members had told him they were aware of the gang's criminal activities.

21

22

23
On cross-examination, Champness testified that people sometimes leave gangs. On redirect, however, he said that if a person who was a gang member in the past commits a "crime that is consistent with a gang crime" now, the person is probably still a gang member.

24

25

26

27

28
Jacob Gallegos testified for the defense. He said that a couple of days after Martin Luther King Day in 2010 (i.e., in January, over a month before police searched Wilson's room), he stayed for two nights at a hotel on East Brundage Lane at Weedpatch Highway. On the second night, a man and woman who were not Wilson and Williams knocked on Gallegos's door. The man said the police were searching his room and had told him to stay away during the search. He offered Gallegos $20 to drive him to a 7-Eleven. Gallegos accepted. When he returned, he saw police officers searching a room.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Devon Steen testified for the defense. He had been Wilson's friend for 13 years. Steen believed Wilson had always held down a job and was a family man. Steen testified that gang members were bad people with no morals; he believed Wilson shared this view and was not a gang member. Steen had never heard of the Country Boy Crips. He had never seen the "C" and "B" tattoos on the backs of Wilson's arms, although the two had often lifted weights together. Steen had never seen or heard of Williams; Wilson spoke to him only of Wilson's children's mother. He remembered that, years ago, Wilson had a girlfriend named Gina.

The jury found Wilson guilty of all counts and found the gang-enhancement allegations true. The court found one of the prior-prison-term allegations true and dismissed the other. The court also found Wilson to have violated his probation in case No. BF123662A.

Wilson received an aggregate sentence of 10 years, consisting of five years for possessing cocaine base for sale, four years for the gang enhancement on that count, and one year for the prior-prison-term enhancement on that count. For maintaining a place for selling, giving away, or using a controlled substance, the court imposed a sentence of three years plus four years for the gang enhancement, all stayed under section 654. For the substantive gang-participation offense, the court imposed a sentence of three years, stayed under section 654. A term of two years for the underlying offense in the probation case also was imposed, to be served concurrently with the term for the possession count.

People v. Wilson, 2012 Cal. App. Unpub. LEXIS 9123, 9-12 (Cal. App. Dec. 17, 2012).

The California Court of Appeal ultimately reversed the convictions on counts two and

three, but the conviction on count one was affirmed. (Answer, Ex. B; ECF No. 26.)

## III.   **GOVERNING LAW**

### A.   **Jurisdiction**

Relief by way of a petition for writ of habeas corpus extends to a person in

custody pursuant to the judgment of a state court if the custody is in violation of the

Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. §

2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn.7 (2000).  Petitioner asserts that he

suffered violations of his rights as guaranteed by the U.S. Constitution.  In addition, the

conviction challenged arises out of the Kern County Superior Court, which is located

within the jurisdiction of this court.  28 U.S.C. § 2241(d); 2254(a). Accordingly, the Court

has jurisdiction over the action.

**B.    Legal Standard of Review**

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.  Lindh v. Murphy, 521 U.S. 320, 326 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Under AEDPA, an application for a writ of habeas corpus by a person in custody under a judgment of a state court may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a); Williams v. Taylor, 529 U.S. at 375 n. 7 (2000). Federal habeas corpus relief is available for any claim decided on the merits in state court proceedings if the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

1.    Contrary to or an Unreasonable Application of Federal Law

A state court decision is "contrary to" federal law if it "applies a rule that contradicts governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are materially indistinguishable from" a Supreme Court case, yet reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005) citing Williams, 529 U.S. at 405-06. "AEDPA does not require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied. . . . The statue recognizes . . . that even a general standard may be applied in an unreasonable manner" Panetti v. Quarterman, 551 U.S. 930, 953 (2007) (citations and quotation marks omitted).  The "clearly established Federal law" requirement "does not demand more than a 'principle' or 'general standard.'" Musladin v. Lamarque, 555 F.3d 830, 839 (2009).  For a state decision to be an unreasonable application of clearly established federal law under §

1   2254(d)(1), the Supreme Court's prior decisions must provide a governing legal principle

2   (or principles) to the issue before the state court. Lockyer v. Andrade, 538 U.S. 63, 70-

3   71 (2003).  A state court decision will involve an "unreasonable application of" federal

4   law only if it is "objectively unreasonable." Id. at 75-76, quoting Williams, 529 U.S. at

5   409-10; Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002). In Harrington v. Richter, the

6   Court further stresses that "an *unreasonable* application of federal law is different from

7   an *incorrect* application of federal law." 131 S. Ct. 770, 785 (2011), (citing Williams, 529

8   U.S. at 410) (emphasis in original).  "A state court's determination that a claim lacks

9   merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

10  correctness of the state court's decision." Id. at 786 (citing Yarborough v. Alvarado, 541

11  U.S. 653, 664 (2004)). Further, "[t]he more general the rule, the more leeway courts

12  have in reading outcomes in case-by-case determinations." Id.; Renico v. Lett, 130 S.

13  Ct. 1855, 1864 (2010). "It is not an unreasonable application of clearly established

14  Federal law for a state court to decline to apply a specific legal rule that has not been

15  squarely established by this Court." Knowles v. Mirzayance, 129 S. Ct. 1411, 1419

16  (2009), quoted by Richter, 131 S. Ct. at 786.

17              2.    Review of State Decisions

18      "Where there has been one reasoned state judgment rejecting a federal claim,

19  later unexplained orders upholding that judgment or rejecting the claim rest on the same

20  grounds." See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).  This is referred to as the

21  "look through" presumption. Id. at 804; Plascencia v. Alameida, 467 F.3d 1190, 1198

22  (9th Cir. 2006).   Determining whether a state court's decision resulted from an

23  unreasonable legal or factual conclusion, "does not require that there be an opinion from

24  the state court explaining the state court's reasoning." Richter, 131 S. Ct. at 784-85.

25  "Where a state court's decision is unaccompanied by an explanation, the habeas

26  petitioner's burden still must be met by showing there was no reasonable basis for the

27  state court to deny relief." Id. ("This Court now holds and reconfirms that § 2254(d) does

28  not require a state court to give reasons before its decision can be deemed to have been

8

'adjudicated on the merits.'").

Richter instructs that whether the state court decision is reasoned and explained, or merely a summary denial, the approach to evaluating unreasonableness under § 2254(d) is the same: "Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. at 786. Thus, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. at 75). AEDPA "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents." Id. To put it yet another way:

> As a condition for obtaining habeas corpus relief from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Id. at 786-87. The Court then explains the rationale for this rule, i.e., "that state courts are the principal forum for asserting constitutional challenges to state convictions." Id. at 787. It follows from this consideration that § 2254(d) "complements the exhaustion requirement and the doctrine of procedural bar to ensure that state proceedings are the central process, not just a preliminary step for later federal habeas proceedings." Id. (citing Wainwright v. Sykes, 433 U.S. 72, 90 (1977).

### 3. Prejudicial Impact of Constitutional Error

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 121-22 (2007) (holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness). Some constitutional errors, however, do not require that the petitioner demonstrate prejudice. See Arizona v.

1   Fulminante, 499 U.S. 279, 310 (1991); United States v. Cronic, 466 U.S. 648, 659

2   (1984).  Furthermore, where a habeas petition governed by AEDPA alleges ineffective

3   assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), the

4   Strickland prejudice standard is applied and courts do not engage in a separate analysis

5   applying the Brecht standard.  Avila v. Galaza, 297 F.3d 911, 918, n. 7 (2002).  Musalin

6   v. Lamarque, 555 F.3d at 834.

7

8   IV.   **REVIEW OF PETITION**

9         A.   **Claims One and Two – Admission of Gang Evidence**

10        In Petitioner's first claim, he asserts that the state court erred in allowing

11  prejudicial expert witness testimony regarding his gang affiliation. Petitioner asserts that

12  the probative weight of the evidence was outweighed by its prejudicial effect. Petitioner

13  asserts that the evidence was used to attempt to manufacture a nexus between the drug

14  charge and gang membership when the prosecution lacked credible reliable evidence to

15  otherwise prove the elements of the offense. In his second claim, Petitioner asserts that

16  the state courts' determination of this claim was unreasonable. Respondent asserts that

17  the second claim is really an extension of Petitioner's first claim, and not a separate

18  claim. The Court agrees. Petitioner's second claim is a statement of the legal standard

19  under which his first claim must be reviewed. Accordingly, the Court shall consider both

20  claims at the same time.

21              1.   Exhaustion and State Court Opinion

22        Petitioner did not raise this claim with the state court. Respondent notes that the

23  claim could be dismissed for failure to exhaust Petitioner's state remedies, but

24  alternatively addresses the claim on the merits. Petitioner has not presented this claim

25  with the California Supreme Court. The Court has considered Petitioner's interest in

26  having the present case adjudicated, but it is not ready for federal adjudication.

27        Despite Petitioner's failure to exhaust his state remedies, the Court may review

28  the claims on the merits to determine if they must be denied. See 28 U.S.C. § 2254(b)(2)

1   ("An application for writ of habeas corpus may be denied on the merits, notwithstanding

2   the failure of the applicant to exhaust the remedies available in the courts of the State.").

3   The Court shall exercise its right to review and deny this claim, rather than allow

4   Petitioner to attempt the futile exercise of exhausting claims that are without merit.

5         As stated, this claim has not been presented to the state courts. Accordingly,

6   "[u]nder § 2254(d), a habeas court must determine what arguments or theories

7   supported or, as here, could have supported, the state court's decision; then it must ask

8   whether it is possible fairminded jurists could disagree that those arguments or theories

9   are inconsistent with the holding in a prior decision of this Court." Richter, 131 S. Ct. at

10  786.

11              2.      Analysis

12        To the extent that Petitioner contends that gang evidence should have been

13  excluded pursuant to California state evidentiary law, his claim fails because habeas

14  corpus will not lie to correct errors in the interpretation or application of state law. Estelle

15  v. McGuire, 502 U.S. 62, 67, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991).

16        With respect to Petitioner's due process claim, the United States Supreme Court

17  has held that habeas corpus relief should be granted where constitutional errors have

18  rendered a trial fundamentally unfair. Williams v. Taylor, 529 U.S. 362, 375, 120 S. Ct.

19  1495, 146 L. Ed. 2d 389 (2000). No Supreme Court precedent has made clear, however,

20  that admission of irrelevant or overly prejudicial evidence can constitute a due process

21  violation warranting habeas corpus relief. See Holley v. Yarborough, 568 F.3d 1091,

22  1101 (9th Cir. 2009) ("The Supreme Court has made very few rulings regarding the

23  admission of evidence as a violation of due process. Although the Court has been clear

24  that a writ should be issued when constitutional errors have rendered the trial

25  fundamentally unfair, it has not yet made a clear ruling that admission of irrelevant or

26  overtly prejudicial evidence constitutes a due process violation sufficient to warrant

27  issuance of the writ." (citation omitted)).

28        Even assuming that improper admission of evidence under some circumstances

1   rises to the level of a due process violation warranting habeas corpus relief under

2   AEDPA, this is not such a case. Petitioner's claim would fail even under Ninth Circuit

3   precedent, pursuant to which an evidentiary ruling renders a trial so fundamentally unfair

4   as to violate due process only if "there are *no* permissible inferences the jury may draw

5   from the evidence." Windham v. Merkle, 163 F.3d 1092, 1102 (9th Cir 1998) (emphasis

6   in original) (quoting Jammal v. Van de Kamp, 926 F.2d 918, 920 (9th Cir. 1991)). See

7   also Boyde v. Brown, 404 F.3d 1159, 1172 (9th Cir. 2005) ("A habeas petitioner bears a

8   heavy burden in showing a due process violation based on an evidentiary decision.").

9   Here, the testimony was relevant to proving the substantive gang participation charge

10  and the gang enhancement on the drug charge.

11       In any event, the admission of the challenged evidence did not deny petitioner a

12  fair trial. After a review of the record, this Court finds that the trial court's admission of

13  the testimony of the gang expert would not have had a "substantial and injurious effect"

14  on the verdict. Brecht, 507 U.S. at 623. See also Penry v. Johnson, 532 U.S. 782, 793-

15  96, 121 S. Ct. 1910, 150 L. Ed. 2d 9 (2001). First, the trial court gave a limiting

16  instruction regarding the gang evidence and instructed the jury not to consider it as

17  evidence of Petitioner's propensity to commit the charged crimes. (Clerk's Tr. at 334.)

18       Furthermore, the state courts found significant evidence supported Petitioner's

19  conviction for possession of cocaine base for sale. See 28 U.S.C. § 2254(e)(1)

20  ("Determinations of a factual issue by a state court shall be presumed to be correct.").

21  Law enforcement officers found a key card bearing the name the hotel on Petitioner.

22  People v. Wilson, 2012 Cal. App. Unpub. LEXIS 9123 at 3-5. The desk clerk told law

23  enforcement that Petitioner was staying in the room in question and the registration form

24  on file had copies of Petitioner's and his girlfriend's drivers licenses attached to it.  Id. In

25  the room officers found 266.8 grams of cocaine base, a digital gram scale with white

26  residue on the weighing platform, $11,400 in cash in a backpack, clear plastic sandwich

27  baggies, and a razor blade with white residue. Id. Accordingly, the jury was provided

28  strong eyewitness testimony regarding the drug offense. In light of the trial testimony as

1   a whole, there is no reasonable probability the verdict as to the drug offense would have

2   been different if the gang expert's testimony had been excluded. Petitioner is not entitled

3   to federal habeas corpus relief on his first and second claims.

4          **B.      Sufficiency of the Evidence**

5          Respondent notes that Petitioner's primary contention is that the trial court

6   violated his constitutional rights by admitting testimonial evidence of Officer Champness,

7   when there was insufficient evidence that Petitioner was an active gang member.

8   (Answer at 14.) While Petitioner does not expressly raise a sufficiency of the evidence

9   claim, Respondent addressed the claim out of an abundance of caution. The Court shall,

10  in turn, review Petitioner's claims of insufficiency of the evidence.

11          1.      State Court Decision

12          Petitioner presented this claim by way of direct appeal to the California Court of

13  Appeal, Fifth Appellate District. The claim was denied in a reasoned decision by the

14  appellate court and summarily denied in subsequent petition for review by the California

15  Supreme Court. (See Lodged Docs. 21-26.) Because the California Supreme Court's

16  opinion is summary in nature, this Court "looks through" that decision and presumes it

17  adopted the reasoning of the California Court of Appeal, the last state court to have

18  issued a reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 804-05 & n.3 (1991)

19  (establishing, on habeas review, "look through" presumption that higher court agrees

20  with lower court's reasoning where former affirms latter without discussion); see also

21  LaJoie v. Thompson, 217 F.3d 663, 669 n.7 (9th Cir. 2000) (holding federal courts look

22  to last reasoned state court opinion in determining whether state court's rejection of

23  petitioner's claims was contrary to or an unreasonable application of federal law under

24  28 U.S.C. § 2254(d)(1)).

25          In denying Petitioner's claim, the California Court of Appeal explained:[2]

26  _____

27          [2] The Court notes that Petitioner's conviction for the offense of active participation in a criminal
    street gang was reversed on appeal. (See Answer, Ex. A.) Accordingly, the sufficiency claim is only
28  relevant to the gang enhancement which was affirmed on appeal.

Section 186.22, subdivision (b)(1), provides a sentence enhancement for "any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members ...." Wilson argues that the prosecution failed to present sufficient evidence to prove the enhancement allegations against him. We hold that the evidence was sufficient.

Wilson first argues that the evidence did not prove that he committed the current offense for the benefit of, at the direction of, or in association with a gang. Officer Champness testified that if a Country Boy Crips member possessed cocaine base for sale, the offense would be for the benefit of, at the direction of, or in association with the Country Boy Crips, but Wilson argues that this testimony is not substantial evidence that he possessed the cocaine base for sale for the benefit of, at the direction of, or in association with the Country Boy Crips, because it was not proved that he was a member of the gang.

We disagree. Wilson claimed gang membership seven times to booking officers, most recently in 2008, 21 months before his arrest in this case. During those 21 months, Wilson was ordered to spend a year in county jail as a condition of probation in case No. BF123662A, so he had even fewer than 21 months of freedom between the time of his last admission of gang membership and the commission of the current offense. Further, there was physical evidence of Wilson's current gang participation at the scene of the current offense itself: the sign and note bearing Wilson's gang moniker, Holiday. The possession-for-sale offense was a characteristic gang crime, according to the police expert. When confronted with a seven-time admitted gang member, bearing gang tattoos, committing a characteristic gang crime in a room where a sign and another writing showed his gang moniker, the jury could reasonably find that the defendant was a current, active participant in a gang.

Wilson argues that the evidence that he claimed gang membership seven times while being booked into jail shows nothing because he "could have claimed to be a County Boy Crip (if in fact this is what he actually claimed as opposed to what was written down or how it was interpreted by Officer Champness) out of an abundance of caution for his safety due to being acquainted with some Country Boy Crips, and not because he was a member of the gang himself. This is the logical inference because [Wilson] has never been a documented gang member."

The idea that Wilson claimed he was a Country Boy Crip even though he was not is not contradicted by the other evidence. Wilson had gang tattoos on his arms and a sign and a note with his gang moniker in his room. As for not being a "documented gang member," Wilson appears to mean that he was never before ordered to register as a gang member. There is, of course, no requirement that a defendant must be a registered gang member before his sentence can be enhanced under section 186.22, subdivision (b).

Wilson says the tattoos on his arms do not show gang membership because "[i]t appears just as likely that this was actually a tattoo of a former girlfriend's initials." It is not just as likely. The prosecution presented photographs of the tattoos; opinion testimony that the letters were "C" and "B" and that many County Boy Crips had tattoos like these;

and a photograph of another Country Boy Crip with similar tattoos in the same places on his arms. On the other side of the balance was only defense counsel's opinion that the "C" looked like a "G" and a witness's remark that Wilson once had a girlfriend named Gina, whose last name was unknown. The evidence that the tattoos were indicative of Country Boy Crips membership was strong, and the evidence that they stood for someone named Gina B. was nearly nonexistent.

Wilson next argues that the prosecution failed to show by substantial evidence that he acted with the specific intent to promote, further, or assist in any criminal conduct by gang members. His reasoning is similar to the reasoning that prevailed on the section 186.22, subdivision (a), issue in Rodriguez: the reference to "conduct by gang members" appears to indicate that the statute applies only if multiple gang members are involved in the underlying offense. The Rodriguez court, however, explicitly denied that the reasoning of that case applies to section 186.22, subdivision (b)(1), enhancements. It stated:

"A lone gang member who commits a felony ... would not be protected from having that felony enhanced by section 186.22(b)(1), which applies to 'any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members....' Because the gang enhancement under section 186.22(b)(1) requires both that the felony be gang related and that the defendant act with a specific intent to promote, further or assist the gang, these requirements provide a nexus to gang activity sufficient to alleviate due process concerns." (Rodriguez, supra, __ Cal.4th __ [2012 WL 6699638, at p. 9].)

(Answer, Ex. B, at 3-5.)

2. Legal Standard - Sufficiency of the Evidence

The Fourteenth Amendment's Due Process Clause guarantees that a criminal defendant may be convicted only by proof beyond a reasonable doubt of every fact necessary to constitute the charged crime. Jackson v. Virginia, 443 U.S. 307, 315-16, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). Under the Jackson standard, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319 (emphasis in original).

In applying the Jackson standard, the federal court must refer to the substantive elements of the criminal offense as defined by state law. Jackson, 443 U.S. at 324 n.16. A federal court sitting in habeas review is "bound to accept a state court's interpretation

1    of state law, except in the highly unusual case in which the interpretation is clearly

2    untenable and amounts to a subterfuge to avoid federal review of a constitutional

3    violation." Butler v. Curry, 528 F.3d 624, 642 (9th Cir. 2008) (quotation omitted).

4         Petitioner asserts that there was insufficient evidence to support finding him guilty

5    of the gang enhancement. To establish a gang enhancement, the prosecution must

6    prove two elements: (1) that the crime was "committed for the benefit of, at the direction

7    of, or in association with any criminal street gang," and (2) that the defendant had "the

8    specific intent to promote, further, or assist in any criminal conduct by gang members

9    ...." Cal. Penal Code § 186.22(b)(1).) "Not every crime committed by gang members is

10   related to a gang." People v. Albillar, 51 Cal.4th 47, 60 (2005). Even "when two or more

11   gang members commit a crime together, they may be on a frolic and detour unrelated to

12   the gang." Emery v. Clark, 643 F.3d 1210, 1214 (9th Cir. 2011) (citing Albillar, 244 P.3d

13   at 1072.)

14        The specific intent element of § 186.22(b)(1) does not "require[ ] that the

15   defendant act with the specific intent to promote, further, or assist a gang; the statute

16   requires only the specific intent to promote, further, or assist criminal conduct by gang

17   members." Albillar, 51 Cal.4th at 67. This element "applies to any criminal conduct,

18   without a further requirement that the conduct be apart from the criminal conduct

19   underlying the offense of conviction sought to be enhanced." Id. at 66; see Emery v.

20   Clark, 643 F.3d at 1215 (recognizing that Albillar "definitively interpreted § 186.22(b)(1),"

21   "overruled" the Ninth Circuit's interpretation of the statute, and that federal courts are

22   bound by the California Supreme Court's interpretation).

23        Evidence that a crime would enhance a gang's status or reputation or that it would

24   intimidate rival gangs or potential witnesses within the gang's territory, has been found to

25   be sufficient to support a finding that the crime was "for the benefit of" the gang. See,

26   e.g., People v. Garcia, 153 Cal.App.4th 1499, 1503-06 (2007).

27        Petitioner contends that insufficient evidence was shown to support the

28   enhancements because the prosecution did not show that offenses were gang related.

1   The Court of Appeal considered Petitioner's challenge to the sufficiency of the evidence
2   for the gang enhancement on direct appeal. The court explained the elements of the
3   gang charge under Section 186.22(b) and clearly reviewed the evidence underlying that
4   conviction in the light most favorable to the prosecution. In support of finding that
5   sufficient evidence existed, the court relied on the fact that Petitioner had claimed gang
6   membership seven times in the past, a sign and a note bearing his gang moniker were
7   present at the scene of the drug offense, he bore tattoos commonly worn by gang
8   members, and the drug offense was a characteristic gang crime. (See Answer, Ex. A.)

9       Additional evidence showed that petitioner was selling narcotics from his
10  residence, that he had previously engaged in, and associated with Country Boy Crips
11  gang members who engaged in, narcotics possession and sales, and that he frequented
12  a known Country Boy Crips hangout where illegal narcotics are sold. (Rep. Tr. at 473-
13  480.) The Court therefore finds that the appellate court analysis was based on the
14  correct federal legal standard and did not unreasonably apply federal law in evaluating
15  Petitioner's sufficiency of the evidence claim.

16      Under Jackson and AEDPA, the state decision is entitled to double deference on
17  habeas review. Based on the Court's independent review of the trial record, it is
18  apparent that Petitioner's challenge to whether the crime was committed in furtherance
19  of the criminal street gang is without merit. There was no constitutional error, and
20  Petitioner is not entitled to relief with regard to this claim.

21

22  **V.    RECOMMENDATION**

23      Accordingly, it is hereby recommended that the petition for a writ of habeas
24  corpus be DENIED with prejudice.

25      This Findings and Recommendation is submitted to the assigned District Judge,
26  pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty (30) days after
27  being served with the Findings and Recommendation, any party may file written
28  objections with the Court and serve a copy on all parties. Such a document should be

captioned "Objections to Magistrate Judge's Findings and Recommendation." Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   December 8, 2014       /s/ Michael J. Seng

UNITED STATES MAGISTRATE JUDGE